PEDRO A. COLLAZO, demandante y apelado, *v.* SECRETARIO DE HACIENDA, demandado y apelante.

Número 11697.

*Sometido:* 3 de abril de 1959. *Resuelto:* 17 de mayo de 1961.

*José Trías Monge, Secretario de Justicia* y *Carlos N. Souffront, Procurador Auxiliar,* abogados del apelante; *Francisco M. Susoni,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Secretario de Hacienda notificó a Pedro A. Collazo deficiencias en su contribución sobre ingresos para los años 1944, 1947 y 1948 montantes a la suma de $7,044.39 que incluía, además de las contribuciones adeudadas, los intereses y penalidades. El Secretario basó su determinación en que el contribuyente no había declarado en su planilla, ni había identificado adecuadamente, los siguientes ingresos: año 1944, un préstamo de $12,000 hechos a José Madrazo; año 1947, otro préstamo de $8,000 al mismo José Madrazo, y año 1948, un préstamo de $10,000 hecho a la firma "Valldejuli & Segarra". De esta última partida el Secretario de Hacienda aceptó durante la investigación, como identificada, la suma de $5,276.06, quedando en controversia el remanente de $4,723.91.

Recurrió el contribuyente ante el Tribunal Superior, Sala de San Juan, alegando, en síntesis, que los ingresos imputados por el Secretario de Hacienda como ingresos no identificados procedían de economías y otras fuentes no tributables.

Contestada la demanda negando sus hechos esenciales, se celebró la vista del caso en sus méritos en 16 de junio de 1953. Para dicha vista el Secretario de Hacienda había solicitado a través de Sub-Poena Duces Tecum los libros de contabilidad de la comercial Valldejuli & Segarra, con la cual

el demandante había trabajado desde 1924 hasta 1948. Los libros no se produjeron porque según alegó el abogado del demandante, y así lo resolvió el tribunal, el requerimiento para su presentación se hizo tardíamente. Luego se procedió a oir el testimonio del demandante Pedro A. Collazo. Lo interrogaron las partes y el propio Juez que presidía la Sala quien manifestó que aparentemente con lo que el demandante pudo ganar desde 1924 al 1948 no podía hacer las inversiones que había hecho para los años en controversia, que de tener que fallar el caso en ese momento, la prueba que había desfilado por parte del contribuyente "no ha destruído lo suficientemente esa presunción (refiriéndose a la presunción de corrección que tienen las determinaciones del Srio. de Hacienda) para convencerme de que debemos modificar o dejar sin efecto la determinación del Tesorero". (¹)

A solicitud de las partes se pospuso la continuación de la vista del caso para que se trajera prueba sobre todos los sueldos, créditos y bonificaciones que el demandante recibió de Valldejuli & Segarra.

Un año después se continuó la vista del caso. Sólo se trajeron al tribunal los libros de la firma Valldejuli & Segarra

---

(¹) Al terminar de interrogar al demandante, el magistrado manifestó lo siguiente:

"P—El Tribunal le va a decir con toda franqueza. Hasta ahora aquí hay una situación un poco inexplicable, cosas que no ocurren lógicamente así. No sé si usted estaba manejando dinero ajeno de otras personas a su nombre o si eran verdaderamdente otras personas las que estaban haciendo esas operaciones a nombre suyo, pero la realidad es que si fuéramos a resolver el caso ahora mismo, me parece que su testimonio no es muy convincente al tribunal, de que esto hubiera ocurrido así. Yo sé que hay personas que tienen el hábito de economizar, que viven limitadamente, económicamente y tratan de aumentar, pero su testimonio demuestra que usted ha estado manejando la cosa, llevando esa situación por un número largo de años, veinte años o más, no toca ese dinero, no lo pone a producir, ni siquiera para usted vivir un poco mejor y de pronto aparece haciendo inversiones cuantiosas sin garantía hipotecaria ni nada.

"R—Sería difícil probárselo, pero realmente fue así.

correspondientes a los años 1941 a 1948, alegándose que los libros de dicha comercial anteriores al año 1941 se habían extraviado. El abogado del demandante anunció que durante los últimos seis días había estado trabajando con el Sr. Villarini y con Collazo preparando el caso; que había obtenido una reproducción magnetofónica del testimonio prestado con Collazo en la vista anterior; que habían "estado chequeando año por año del veinticuatro para acá. Esto lleva consigo rectificaciones sustanciales al testimonio. Modificaciones en cuanto a unos extremos y rectificaciones en cuanto a otros". Se procedió entonces a la práctica de la prueba. Declaró el Sr. Madrazo sobre los préstamos que le había hecho el demandante, depuso éste nuevamente y además presentó cierta prueba documental. El Secretario de Hacienda presentó también prueba documental.

Más tarde el tribunal formuló conclusiones determinando que las cantidades en controversia habían sido debidamente identificadas y dictó sentencia declarando con lugar la demanda y en su consecuencia anulando las deficiencias para los años 1944, 1947 y 1948.

"P—Como esta vista se va a continuar, yo le quiero anticipar al compañero que este es un caso en que él nos tiene que demostrar haber recibido ese dinero en forma convincente para que el tribunal tenga base para saber si él tenía esas economías.

"Lcdo. Susoni:

"Lo que vamos a demostrar es que del 1924 hasta esta fecha, él ha recibido 'X' dinero, que están en los . . .

"Hon. Juez:

"Aparentemente con lo que se pudo ganar del 1924 al 1948, no podía hacer esas inversiones.

"Lcdo. Susoni:

"Pero durante el 1924 hay $500 de bonificación y nos trasladamos del 1924, un hombre que vive en la forma en que vive y declara lo que tiene y tiene un bono nada más que de trescientos dólares hasta el año 1936 y de quinientos dólares en adelante y de mil dólares en el mil novecientos cuarenta y cuatro.

"Hon. Juez:

"Eso es lo que queremos que nos pruebe, la existencia de esos bonos en forma satisfactoria." (T. E., págs. 42 a 43.)

 En este recurso el demandado imputa al tribunal sentenciador la comisión de ocho errores. En realidad, todos van dirigidos a impugnar distintas conclusiones de hecho formuladas por dicho tribunal. Por esa razón, no discutiremos separadamente cada uno de dichos errores, sino que determinaremos, si en términos generales la sentencia objeto de revisión es o no correcta.

El contribuyente Collazo declaró que desde 1936 a 1943 había economizado los $12,000 que prestó a Madrazo en 1944. La prueba sobre sus ingresos y egresos en los años 1936 a 1940 consistió exclusivamente de su propio testimonio. Declaró que en 1936 fue nombrado por la mercantil Valldejuli y Segarra gerente de su sucursal en Salinas con un sueldo de $25 semanales más un bono de 20 por ciento de los beneficios. Con su sueldo sufragaba todos los gastos de su familia (esposa y cinco hijos) y además ayudaba a su señora madre y a tres hermanos de madre, menores de edad. El bono, dijo, lo economizaba íntegro, guardando el dinero en la caja del negocio; que esos bonos no bajaban de $1,000 anuales. No pudo decir, sin embargo, cuánto había economizado en el año 1936, ni pudo detallar sus economías año por año, antes de 1941. Cuando se le preguntó qué base tenía para afirmar que había recibido un bono promedio de $1,000 durante ese período contestó que se basaba en "que sencillamente tenía la cantidad esa".

Este contribuyente no llevaba libros, ni récords de los beneficios, ni por tanto, del monto del 20 por ciento que alega le correspondía en dichos beneficios. Los libros se llevaban en la casa matriz de Valldejuli y Segarra en Ponce. El esfuerzo realizado por el demandado para que se trajeran a corte dos libros correspondientes al período 1936 a 1940, fue inútil, pues se alegó que se habían extraviados. Durante el juicio estuvo presente el señor Arturo E. Valldejuli, socio de la mercantil Valldejuli y Segarra, y no fue llamado a decla-

rar por el contribuyente. En la segunda vista el contribuyente sabía que no contaba con los libros. Ningún esfuerzo realizó para producir alguna otra prueba sobre sus ingresos hasta el año 1941.

Por otro lado, este contribuyente rindió declaración de ingresos por primera vez en el año 1944. En una declaración jurada prestada por él ante un Inspector del Negociado de Contribución sobre Ingresos, depuso que no había rendido declaración de ingresos antes de 1944 porque sus ingresos no pasaban de $2,000 y por tal razón no venía obligado a rendirla. Entre el testimonio que prestó en la primera y el que prestó en la segunda, un año después, existen serias discrepancias sobre extremos esenciales. Aun más, estas contradicciones se advierten entre su testimonio directo y el indirecto.

Las circunstancias apuntadas, sin que hayamos pretendido señalarlas todas, dejan el testimonio del contribuyente, carente de fuerza persuasiva.

Un examen de todo el récord en conjunto produce la impresión de que el testimonio del demandante en la segunda vista respecto a sus economías en los años 1936 a 1940, era insuficiente para destruir el efecto que causó en el juzgador, su testimonio anterior cuando dicho juzgador así lo consideró. En realidad, la prueba del contribuyente—su testimonio oral—en la segunda vista no fue distinta, ni más razonable o persuasiva que la aportada por él en la primera vista del caso.

Se presume correcta toda determinación contributiva hecha por el Secretario de Hacienda. *Mayagüez Sugar Co. v. Sancho, Tes.*, 64 D.P.R. 734; *Rossi v. Tribl. de Contribuciones*, 66 D.P.R. 425; *A. Fernández Hnos. v. Tribl. Contribuciones*, 66 D.P.R. 603; *Corporación Azucarera v. Tribl. Contribuciones*, 69 D.P.R. 204; *Tes. v. Tribl. Contribuciones y Destilería Serrallés*, 70 D.P.R. 225; *Tes. v. Tribl. Con-*

*tribuciones y Aguirre,* 70 D.P.R. 408; *García* v. *Sec. de Hacienda,* 76 D.P.R. 503; *Buscaglia* v. *Tribl. Contribuciones,* 70 D.P.R. 846; *González* v. *Tribl. de Contribuciones,* 73 D.P.R. 26.

Corresponde al contribuyente destruir con prueba esa presunción—*Soto* v. *Sec. de Hacienda,* 78 D.P.R. 177; *González* v. *Tribl. Contribuciones,* supra—y dicha prueba debe consistir de algo más que meras generalidades. La doctrina de que la prueba debe ser clara, robusta, fehaciente y convincente—*Tes.* v. *Tribl. de Contribuciones y Aguirre,* supra; *García* v. *Sec. de Hacienda,* 76 D.P.R. 503; *Buscaglia, Tes.* v. *Tribl. Contribuciones,* supra; *Corporación Azucarera* v. *Tribl. Contribuciones,* supra, ha sido reexaminada recientemente por este Tribunal en el caso de *Carrión* v. *Tesorero de Puerto Rico,* 79 D.P.R. 371 y expuesta en términos de que aunque dicha prueba no tiene que ser extraordinariamente persuasiva y fehaciente, ni clara, robusta y convincente, debe por lo menos ser del grado y medida de persuasión que se exige en todos los demás casos civiles.

Aquí, la prueba del contribuyente, respecto a los años 1936 a 1940, y por las razones ya apuntadas, no cae dentro del caso de *Carrión.*

■ Pasemos ahora a considerar que parte del ingreso de $12,000 en 1944, si alguna, quedó razonablemente identificada por el contribuyente.

Su bono en 1941, según revelan los libros de Valldejuli y Segarra, fue de $124. En enero de 1944 dicha mercantil le liquidó los bonos de 1942, 1943 y 1944 y los tres sumaron la cantidad de $3,194.48. De esta última cantidad el contribuyente invirtió $2,600 en la compra de una casa, quedándole un remanente de $594.48, el que sumado al bono de $124 de 1941, arroja un total de $718.40. Esta suma representa el ingreso debidamente identificado por el contribuyente en 1944. Por lo tanto, la diferencia entre los $12,000

prestados a Madrazo en dicho año, y la suma identificada, deja un ingreso sin identificar de $11,281.52. En este respecto la sentencia del tribunal a quo es errónea y debe ser modificada.

■ En cambio, consideramos que el contribuyente logró identificar el ingreso de $8,000 en el año 1947 y el de $10,000 en el 1948. Esos ingresos provienen de sus economías. [2] La prueba revela que en el año 1944 logró economizar $1,772.18, en 1945, $5,330.81, en 1946, $3,653.35 y en 1947, $4,151.31, o sea, un total de $14,907.65, suma ésta que es suficiente para dejar identificado el ingreso de $8,000 en 1947, y aún queda un remanente de $6,907.65.

En 1948 logró economizar $6,492.76 que sumado al sobrante de 1947 hace un total de $13,400.41, cantidad ésta que es suficiente para dejar identificado el préstamo de $10,000 que hizo a Valldejuli y Segarra en 1948.

*Por los motivos expuestos la sentencia dictada por el Tribunal Superior, Sala de San Juan, será modificada en el sentido de que el contribuyente tuvo ingreso no identificado en el año 1944 de $11,281.52 y así modificada será confirmada.*

El Juez Asociado Sr. Santana Becerra no intervino.

---

[2] Ya en 1944 el contribuyente devengaba un sueldo de $40 semanales, más un bono anual y además tenía otros ingresos, a saber: en el 1944 devengó un sueldo de $2,080 más una bonificación de $1,766.89 y los intereses del préstamo a Madrazo, ascendentes a $720, más $250 de rentas de una propiedad; en el año 1945 devengó un sueldo de $2,080, $3,672.87 de bonificación, $300 de renta de la casa y $720 de intereses del préstamo; en 1946 devengó un sueldo de $2,080 y $3,384.76 de bonificación, $757.59 de intereses y $300 de renta de la casa; en 1947 recibió $2,120 de sueldo, $2,826.33 de bonificación, $820 de intereses y $300 de rentas; en 1948 recibió $2,120 de sueldo, $5,276.09 de bonificación, $506.77 de intereses y $300 de rentas.