JUAN RAMÓN RAMOS, demandante y recurrido, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-63-229     *Resuelto:* 4 de marzo de 1966

---

234

*J. B. Fernández Badillo, Procurador General, Jenaro Marchand y Manuel Tirado Viera, Procuradores Generales Auxiliares,* abogados del recurrente; *Brown, Newsom, Córdova & Díaz,* abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El demandante allá para los años 1953 y 1956 se dedicaba a la siembra y cultivo de caña. En el manejo y administración de su negocio no llevaba libros de contabilidad e informaba sus ingresos a base de un sistema de recibido y pagado (*cash basis*).

Después de practicada la correspondiente investigación el Secretario de Hacienda declaró e informó a aquél deficiencias montantes a la cantidad de $46,918.43 para el primero de dichos años y de $2,725.94 para el segundo. [1]

No estuvo de acuerdo el contribuyente. Oportunamente radicó demanda en el Tribunal Superior, Sala de San Juan, impugnando esas deficiencias.

Visto el caso en sus méritos, tras una serie de estipulaciones, [2] determinó el tribunal a quo que para el año 1953 el contribuyente había devengado ingresos, no declarados en su planilla de ese año, en la cantidad de $30,690.16 producto de los beneficios obtenidos en la sociedad Ramos Hermanos. [3]

[1] Esas deficiencias se componen de las siguientes partidas:

|  | 1953 | 1956 |
|---|---|---|
| Participación en Beneficios de Sociedad | $30,690.16 | $ — |
| Ingresos de Caña no Declarados ese Año | 13,552.67 | — |
| Partidas Rechazadas por Falta de Comprobación | 2,529.60 | 2,167.74 |
| Venta de Azúcar | — | 558.20 |
| Venta de Gasolina | 146.00 | — |
| Totales | $46,918.43 | $2,725.94 |

[2] En vista del caso se estipuló, aceptando como correctas el contribuyente las cantidades de $2,167.74 y $146.00, mientras el Secretario convino en reducir a $1,456.00 la partida original montante a $2,529.60.

[3] Tal hecho había sido anteriormente cuestionado, dictando en aquella ocasión el mismo tribunal sentencia en favor del Secretario que luego fue confirmada por este Tribunal. Véase *Ramos Hermanos* v. *Srio. de Hacienda*, 89 D.P.R. 552 (1963).

En cuanto a la partida de $13,552.67 determinó que la misma reflejaba ingresos por concepto de liquidaciones de excedentes de azúcar; que la prueba presentada había demostrado que dicha partida estaba a su vez compuesta de dos cantidades, la primera de las cuales, montante a $4,534.07, se refería a ingresos recibidos por el contribuyente durante el año 1952 y declarados como tales por éste en su planilla para tal año. La diferencia, o sea, $9,018.60 consistía de ingresos por el mismo concepto, recibidos por el contribuyente durante el año 1954 y declarados en su planilla correspondiente a dicho año. Por tal razón consideró que era improcedente incluir la cantidad de $13,552.67 en la deficiencia declarada. [4] A petición del funcionario demandado libramos un auto de revisión.

El Secretario de Hacienda, sostiene que:

"Erró el tribunal a quo al eliminar la partida de $13,552.67 como ingreso tributable tenido por el demandante en el año 1953 por ser ello contrario a la prueba presentada y a las admisiones de las partes."

Nuestra Ley de Contribución sobre Ingresos de 1954, Núm. 91 del 29 de junio del mismo año (13 L.P.R.A. secs. 3001 *et seq.*) y su Reglamento permiten a los agricultores utilizar cualquiera de tres métodos de contabilidad en el cómputo de su ingreso anual a fin de fijar su responsabilidad tributaria. *Ramos Hermanos* v. *Srio. de Hacienda,* supra, 13 L.P.R.A. sec. 3041, Arts. 22-A-7-6 y 23(a) 11 del Reglamento. (13 R.&R.P.R. secs. 3022(a)–7 y 3023(a)–11.) Éstos son: el método de cosecha (*crop basis*) el de acumulación (*accrual basis*) y el utilizado por el contribuyente, esto es, el método de recibido y pagado (*cash basis*). [5]

---

[4] Eliminó además la partida de $558.20 de la deficiencia declarada para 1956 por considerar que no se había ofrecido prueba en cuanto a ese ingreso. No se cuestiona la legalidad de esa determinación en este recurso.

[5] Lo mismo disponían la Ley Núm. 74 de 1924 aprobada el 6 de agosto de 1925 y su Reglamento. Ver Secs. 3(d), 14 y 30 de la ley y Arts. 63 a 66, 76, 89 y 90 del Reglamento.

█ Brevemente definido, este último consiste en incluir en el ingreso declarado en la planilla solamente las partidas realmente recibidas, ya sea en dinero o su equivalente, y declarar como deducciones aquellas que hayan sido realmente pagadas durante el período contributivo. Véase Arabía, *Manual de Contribución sobre Ingresos*, Ed. Rev. 1959.

En un sistema tributario de escalas progresivas, como lo es el nuestro, bajo este método, cualquier contribuyente acogido al mismo podría fácilmente obviar parte de su responsabilidad contributiva, bastándole posponer el momento en que efectivamente deba recibir determinado ingreso para de tal manera evitar declararlo en un año en particular. Finnegan, *"Constructive Receipts of Income"*, 22 N.Y.U. Institute on Federal Taxation, pág. 367.

Esa posibilidad creó, en el sistema tributario federal, una excepción al método de recibido y pagado que se conoce en el derecho tributario como la *doctrina de recibos implícitos (constructive receipts doctrine)*. [5a]

█ Con arreglo a esa doctrina, no empece el hecho de que un contribuyente se acoja al método de recibido y pagado, si al finalizar cualquier año contributivo se le tenía a éste separado y a su entera disposición determinado ingreso, sin restricción o limitación alguna en cuanto al modo o tiempo en que pueda hacerlo efectivo, tal utilidad debe, en ese año, ser declarada como ingreso y no en aquel en que al contribu-

[5a] Desde los primeros reglamentos del Tesoro de los Estados Unidos relacionados con la Ley de Rentas de 1918, sin interrupción ninguna hasta el presente, véase Sec. 39.4202, se ha consagrado mediante reglamentos dicha doctrina. La sección antes señalada lee como sigue:

"Sección 39.4202, supra: Ingreso que ha sido acreditado a la cuenta de, o separado para un contribuyente y que puede ser retirado por éste en cualquier momento está sujeto a tributación en el año durante el cual es así acreditado o separado, aunque no haya sido realmente poseído por el contribuyente en ese período. Para que constituya una entrada en tal caso el ingreso debe ser acreditado o separado para el contribuyente sin ninguna limitación o restricción sustancial respecto al modo o condición en que ha de hacerse el pago, y debe estar disponible para que pueda ser retirado en cualquier tiempo y traerse dentro de su disposición y control." (Traducción nuestra.)

yente le plazca hacerla efectiva. Zaiky, *"Problems in Constructive Receipt and Deferral of Income,"* 13 N.Y.U. Institute on Federal Taxation, pág. 53. "Un contribuyente, aun en aquellos casos en que se utiliza el método de recibido y pagado, que ha disfrutado en su totalidad el beneficio de una ganancia económica representada por su derecho a recibir tal ingreso, no debe escapar a la tributación por el mero hecho de que él no ha recibido realmente el pago del mismo." [6] A éste no debe permitírsele seleccionar deliberadamente el año en que deba declarar su ingreso. *Washington* v. *Comm.,* 80 F.2d 829 (1936).

Dicha doctrina es una disponible como defensa tanto al representante del fisco como al contribuyente. *Ross* v. *Comm.,* 169 F.2d 843 (1948); se aplica solamente a situaciones donde el contribuyente se ha acogido a un sistema de recibido y pagado, Kutz, *"Constructive Receipts Reexamined,"* 12 N.Y.U. Institute on Federal Taxation, pág. 498; y a pesar de que es de origen reglamentario, la jurisprudencia, aplicándola, ha vigorizado su efectividad legal. [7]

Los siguientes elementos se han señalado como requisitos indispensables para dar aplicación a la misma: (1) el contribuyente debe tener control suficiente sobre el ingreso en cuestión como para poder imputársele un recibo implícito del mismo, (2) esa cantidad debe estar acreditada o separada en favor o a disposición del contribuyente y (3) el deudor debe tener suficiente dinero disponible como para que en cualquier momento pueda satisfacer la deuda. [8]

El ordenamiento jurídico tributario local ha adoptado la doctrina de recibos implícitos. Ver Arabía, *op. cit.* pág. 35, *Rubert* v. *Tribunal de Contribuciones,* 74 D.P.R. 51 (1952) cit. precisa pág. 67. Específicamente los Arts. 42–2 y 42–3 de nuestro Reglamento (13 R.&R.P.R. secs. 3042–2 y 3042–3)

---

[6] Mertens, *Law of Federal Taxation,* Vol. 2, sec. 10.02, pág. 4.

[7] *Hyland* v. *Comm.,* 175 F.2d 422 (1949).

[8] Finnegan *op. cit.* pág. 368.

sustancialmente iguales a las disposiciones federales al respecto consagraron la misma. (⁹)

---

(⁹) Dichos Arts. leen como sigue:

"Sec. 3042–2. Ingreso no reducido a posesión

"El ingreso que se acredite a la cuenta de un contribuyente o se separe para él, y del cual él puede disponer en cualquier momento, está sujeto a contribución para el año durante el cual así se acredite o se separe, aun cuando entonces no se reduzca efectivamente a posesión. Para que constituya recibo en tal caso, el ingreso tiene *que acreditarse o separarse para el contribuyente sin ninguna limitación o restricción substancial en cuanto al tiempo o modo de pago, o condición bajo la cual el pago habrá de hacerse, y tiene que estar a su disposición de modo que él pueda retirarlo en cualquier momento y su recibo puesto bajo su dominio y disposición.* Una entrada en los libros, si se efectúa, deberá indicar una transferencia absoluta de una cuenta a otra. Si una corporación acredita contingentemente a sus empleados una bonificación en acciones, pero las acciones no están a disposición de dichos empleados hasta cierta fecha futura, el mero crédito en los libros de la corporación no constituye recibo." (Énfasis suplido.)

"Sec. 3042–3. Ejemplos de recibo implícito

"Si hay cupones de interés que han vencido y son pagaderos, pero que no se han cobrado, tal interés, aunque no haya sido cobrado al convertirse en vencido y pagadero, deberá incluirse en el ingreso bruto para el año durante el cual los cupones vencieron, a menos que pueda demostrarse que no había fondos disponibles para el pago de los intereses durante dicho año. Los intereses deberán incluirse en el ingreso bruto aunque los cupones sean cambiados por otra propiedad en lugar de ser eventualmente cobrados. El monto de cupones en mora es ingreso para el año en que se pagan. Los dividendos de acciones corporativas están sujetos a contribución cuando se les pone a la disposición incondicional del accionista. Si el 31 de diciembre un dividendo se declara pagadero, y la corporación había tenido la intención de, y siguió la costumbre de pagar los dividendos mediante cheques enviados por correo de modo que los accionistas no podían recibirlos hasta enero del año siguiente, no se entenderá que dichos dividendos fueron puestos a la disposición incondicional de los accionistas con anterioridad a enero, mes en que los cheques fueron efectivamente recibidos. Los intereses acreditados sobre depósitos en cuentas de ahorro, aunque el banco tenga nominalmente una regla raras veces o nunca puesta en vigor, al efecto de que puede requerir notificación con varios días de anticipación antes de permitir retiros de fondos, son ingresos del depositante al acreditarse. Una suma acreditada a accionistas de asociaciones de ahorro y préstamos, cuando tal crédito pasa sin restricción al accionista, considérase ingreso tributable para el año en que se concede el credito. Si el monto de dichas acumulaciones no se convierte en disponible para el accionista hasta el vencimiento de su acción, el monto de cualquier acción que exceda del monto total pagado o depositado por el accionista es ingreso para el año en que vence la acción."

De la transcripción de evidencia que obra en nuestro poder se desprende que, referente a la partida de $9,018.60 declarada como ingreso por el contribuyente en 1954, el Secretario de Hacienda era de parecer que dicha cantidad estuvo a la disposición del contribuyente en 1953 y por tanto alega debió éste declararla como ingreso de ese año.

La evidencia testifical aducida en el juicio dejó aclarada cualquier duda a ese respecto.

Declaró el Sr. Manuel Comas Grass, que desde 1929 ha venido trabajando con la Central San Vicente, Inc. y en la actualidad ocupa el cargo de asistente administrativo en la misma. (T.E. pág. 36.) Que a petición del contribuyente, colono por muchos años de dicha central, hizo un estudio de su cuenta para los años en cuestión. Que dicho estudio revela que para el año terminado en 31 de diciembre de 1953 la administración de la central tenía interés en conocer su situación financiera y por tal razón se valoraron provisionalmente los excedentes que pudieran corresponder a los colonos por motivo de la entrega de caña y producción de azúcar de la zafra de 1953. (T.E. pág. 37.) ; que esa liquidación provisional se llevó a los libros con fecha de 31 de diciembre de 1953; que con esa misma fecha se expidieron los cheques correspondientes a los saldos en favor de los colonos, pero que eso no quería decir que se hubieran pagado ese mismo día pues la central estaba haciendo negocios con seiscientos colonos y era físicamente imposible expedir y pagar todos esos cheques ese mismo día (T.E. pág. 38.) ; *y que el ingreso en cuestión no pudo estar disponible al contribuyente en 1953 pues la central vino a conocer el verdadero saldo en favor de éste en el proceso de trabajo clerical y mecánico de contabilidad realizado posteriormente.* (T.E. pág. 39.)

La determinación de *cuándo* o específicamente dentro de qué período contributivo ha estado determinado ingreso a la disposición de un contribuyente a fin de poder aplicar la doctrina de recibos implícitos es una cuestión de hechos a

ser dirimida por la prueba ofrecida; *Ross* v. *Comm.*, supra, *Weil* v. *Comm.*, 173 F.2d 805 (1949), Mertens, *op. cit.* Vol. 2, sec. 10.02, pág. 6, y las conclusiones del tribunal inferior a ese respecto serán definitivas a menos que se demuestre pasión, prejuicio o parcialidad en la apreciación de la prueba, o que sean claramente erróneas.

■ En cuanto a la partida de $4,534.07 también la prueba ofrecida por el contribuyente fue lo suficientemente persuasiva como para sostener su posición en el sentido de que éste recibió y usó la misma durante el 1952, año en que fue declarada como ingresos. ([10])

*Debe confirmarse la sentencia dictada por el tribunal inferior.*

---

([10]) Enteramente aplicable a este caso consideramos nuestras expresiones sobre la responsabilidad probatoria de un contribuyente que impugna en corte las determinaciones del Secretario de Hacienda relativas a su responsabilidad tributaria manifestadas en *Reyes García* v. *Srio. de Hacienda*, 84 D.P.R. 596 (1962). Allí señalamos que:

"Reiteradamente hemos resuelto que las determinaciones administrativas del Secretario de Hacienda están cobijadas por una presunción de corrección que cede ante prueba creíble y razonable que sostenga las contenciones del contribuyente, [citas]; y que aunque esta prueba 'no tiene que ser extraordinariamente persuasiva y fehaciente, ni clara, robusta y convincente, debe por lo menos ser del grado y medida de persuasión que se exige en todos los demás casos civiles', según dijimos en *Collazo* v. *Srio. Hacienda*, 82 D.P.R. 650, 656 (1961). . . . Presentada la prueba del contribuyente, correspondía al Secretario presentar evidencia en apoyo de sus contenciones, y la que aquí se presentó prácticamente equivalió a 'cruzarse de brazos y descansar en la presunción de corrección,' *Carrión* v. *Tesorero*, 79 D.P.R. 371, 384 (1956). Todo cuanto tenía que considerar el tribunal de instancia era si la prueba aducida por el contribuyente y que no fue contradicha en forma alguna, era digna de crédito y razonablemente sostiene su posición. Es cierto que no viene obligado a creer o aceptar el testimonio no contradicho de la parte interesada cuando éste es altamente improbable, [citas], o manifiestamente irrazonable, [citas]. Nada hay específicamente en los autos que demuestre que no se le dio crédito a la prueba presentada por el contribuyente, la cual apreciada en conjunto es lo suficientemente persuasiva para sostener la posición que ha asumido en el pleito."